IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CRIMINAL CASE NO.: CCB-19-0568 |
| SHIPLEY, *et al.* | : | |
| **Defendants** | : | |

### DEFENDANT RONNIE FINNEY'S SENTENCING MEMORANDUM

The Defendant Ronnie Finney, through counsel Steve Mercer and the law offices of RaquinMercer LLC, respectfully requests a sentence of 90 months as "sufficient, but not greater than necessary" to accomplish the purposes of 18 U.S.C. § 3553(a)(2). Mr. Finney also requests that the Court recommend to the Bureau of Prisons (the "BOP") that it designate him to FCI Petersburg for vocational training (CDL) and substance abuse treatment (RDAP). Relatedly, Mr. Finney asks the Court to recommend to the BOP that it exercise a management variable if the security score for Mr. Finney indicates a USP high security institution. Furthermore, Mr. Finney is entitled to credit the sentence imposed with 737 days (October 7, 2020 to October 13, 2022). 18 U.S.C. § 3585(b). Mr. Finney states the following in support of these requests.

### A sentence of 90 months would adequately punish, deter, and rehabilitate

The Court should impose a 90-month sentence because it is consistent with the 18 U.S.C. § 3553(a) factors. First, Mr. Finney's conduct of participating in a drug trafficking enterprise occurred in the context of his long-standing and untreated heroin addiction. Mr. Finney self-reported to the Probation Officer during the presentence investigation that "he began using heroin at the age of 24 or 25 and used the drug daily until his arrest." (PSR, ¶84, p. 16). Mr. Finney's heroin addiction largely motivated his involvement with the enterprise for the purpose of self-medicating. Mr. Finney was not in a leadership, management, or supervisory role within the enterprise. There is no indication that he recruited others to join the enterprise.

Second, Mr. Finney's addiction is a treatable condition and he is amenable to treatment. Indeed, he is an excellent candidate for treatment given his strong family ties and history of gainful employment. Mr. Finney's history also includes a sustained period of sober living in conjunction with treatment about ten years ago. Still, Mr. Finney needs more intensive treatment to address his addiction that is rooted in his social and family history. As noted in the presentence investigation report, "[t]he defendant's mother has always suffered from drug addiction, using heroin, crack cocaine, and fentanyl. When the defendant was 9 years old, his mother was convicted of Robbery with a Deadly Weapon and served 5 years in jail. According to the defendant's father, Mrs. Finney is currently in a methadone program." (PSR, ¶78, p. 16). Mr. Finney requires an intensive level of individualized treatment to address and resolve these aspects of his life. Mr. Finney seeks to begin that treatment during his incarceration; however, the most effective intervention and treatment is community based.

Third, Mr. Finney has strong ties to his family. Chamia Harcum, the mother of Mr. Finney's two sons, Josiah and Jahleel, writes, "Josiah being 8 years old now has suffered a great loss with not having his dad in his life. Before this situation happened he was accustomed to seeing his dad everyday for the first 6 years of his life. … Josiah has started playing little league football and gets sad on game days because his dad has never seen him play." (Letters-1). Moreover, "Jahleel was only 1 years old when his father was arrested but he still remembers him completely and lights up when he gets to talk to him." (Letters-1). Ms. Harcum can "see the toll" of Mr. Finney's absence in their children's lives. (*Id.*).

Mr. Finney is also close to his immediate family. His father, Ronnie Finney Sr. writes how proud he is that his son cares for Josiah and Jahleel and is always there for the family. (Letters-2). Younger sister Sarah Finney writes about her brother's kind heart and how he always was there to

2

help her. (Letters-3). Mr. Finney's aunt, Shirley Arnold, writes how Mr. Finney is "a family kind of guy that keeps his family in his daily plans." (Letters-4).

Fourth, Mr. Finney was gainfully employed at 84 Lumber from 2014 until his arrest in 2020. Moreover, Mr. Finney has always sought out work. As discussed in the PSR, Mr. Finney's "[a]dditional employment history includes Giant Foods (stocker) Checkers Restaurant, and a seasonal job at Kohls (stocker)." (PSR, ¶88, p. 18). Mr. Finney has also worked with his father at an advertising company and at the Chesapeake Detention Facility in sanitation.

Given these factors, a sentence of imprisonment that is greater than 90 months to serve is unnecessary to achieve the goals of sentencing. The balance of hardship of 20 additional months separating Mr. Finney from his children and family will harm Mr. Finney far more than any speculative harm to the public if he is sentenced to 90 months. Mr. Finney needs access to much "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). He needs to be with his family and children. A longer sentence by 20 months does not serve that goal nor can it be shown to accomplish any other goal.

The Court must determine a sentence that is "sufficient, but not greater than necessary, to comply with the purposes … (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2). The Court ordinarily begins with the recommended sentence under the U.S. Sentencing Guidelines.

The parties agree the anticipated total offense level is 25. Still, the government is free to argue that there is an additional 2-level increase in the offense level applies under U.S.S.G. §

2D1.1(b)(2). Guideline § 2D1.1(b)(2) instructs that a defendant's base offense level be enhanced by two levels where a defendant, while committing a drug-related offense, engaged in one of three types of "violence": Where he (1) "used violence," (2) "made a credible threat to use violence," or (3) "directed the use of violence." *See generally United States v. Pineda-Duarte*, 933 F.3d 519, 523-24 (6th Cir. 2019); *United States v. Atkinson*, 815 Fed.Appx. 704 (4th Cir. 2020). The phrase "made a credible threat to use violence" in § 2D1.1(b)(2) "applies when a defendant credibly communicates the intent to injure a person but has not yet acted upon that intent—for example, when one credibly threatens to hit someone with a shovel but has not yet swung that shovel." *Id.* at 523-24. Here, the stipulated facts do not provide a sufficient factual basis to find Mr. Finney credibly threatened a violent act.

Mr. Finney's statement referenced at page 4 of the stipulated facts ("the Defendant told Co-Conspirator 1 that he had threatened an individual from the Abington Avenue drug trafficking organization with a gun"), does not provide an adequate basis for the 2+ enhancement. Mr. Finney's statement to Co-Conspirator 1 does not constitute an admission of a credible threat of violence. The fact that Mr. Finney told Co-Conspirator 1 that he threatened someone else is an insufficient basis to conclude that he actually communicated a credible threat of violence. Indeed, in the statement of facts immediately preceding Mr. Finney's "threat," Co-Conspirator 1 criticized him for "not doing enough to avenge Mitch Finney's death." (Stipulated Facts, p. 4). The next day, Mr. Finney responded with the statement that he had threatened some unidentified person. (*Id.*) . In that context, it is permissible to view Mr. Finney's statement that he told Co-Conspirator 1 that he had threatened someone as harmless bravado. Mr. Finney's history is consistent with that of a non-violent substance user.

The stipulated facts provide that Mr. Finney was a member of the enterprise ETG Crips. (Plea Agreement, Stipulated Facts, pp. 2-3). To be sure, Mr. Finney accepted responsibility for becoming a member of the enterprise and conspiring to distribute, on dates relating back to 2010, to acts of distribution. Mr. Finney was in his early twenties at that time. It was also conduct for which the State of Maryland punished him in 2010 and 2013. On November 23, 2010, Mr. Finney pled guilty to distribution of narcotics in the Circuit Court of Maryland for Baltimore City (Case #110350005). As a result, on November 5, 2013, he was found in violation of his probation and sentenced to 3 years of incarceration beginning from July 27, 2013. (PSR, p. 13, ¶64). Still, Mr. Finney received insufficient resources to address his substance abuse. Nor did he receive adequate vocational training.

Although an offense level 25 with a criminal history category V yields a guidelines range of 100-125, and an offense level 27 provides a range of 120-150 months, the parties stipulated in Mr. Finney's plea agreement under Fed. R. Crim. P. 11(c)(1)(C) that a sentence between 90 and 110 months of imprisonment in the custody of the BOP "is the appropriate disposition of this case taking into consideration the nature of circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a)." (Plea Agreement, p. 6, ¶9). The factors that inform the Court's exercise of discretion under 18 U.S.C. § 3553(a) point to a sentence of 90 months which is not greater than necessary to accomplish the goals of sentencing. The Court's sentence should primarily be guided by Mr. Finney's tremendous need for "educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Mr. Finney does have requests to mitigate the unnecessary harshness of punishment. The BOP classifies facilities into one of five security levels: minimum, low, medium, high, and

administrative. BOP Inmate Security Designation and Custody Classification, P5100.08 Chapter 1, page 1 ("5100.008") (available at: https://tinyurl.com/mdmd7yyp). BOP classifies inmates based on the following factors: (1) the level of security and supervision the inmate requires; and (2) the inmate's program needs, *i.e.*, substance abuse educational/vocational training, individual counseling, group counseling, or medical/mental health treatment. *Id.* The inmate's time remaining to serve, and security point score are crucial factors in the BOP's process for designating the inmate to a security level. 20 additional month only increases the likelihood for a greater security classification.

If Mr. Finney is designated to a U.S. Penitentiary, he will be ineligible for the programs available at medium and low security facilities. In short, Mr. Finney needs placement in a program designed to provide substance abuse treatment and vocational training. These programs are available at low and medium security facilities. It makes sense for Mr. Finney to receive these services. His substance abuse history is a treatable condition. He is an excellent candidate for vocational training because of his solid work history. Accordingly, Mr. Finney seeks a sentence that will facilitate treatment in a low or medium security facility.

If the BOP designates Mr. Finney as a high security classification, Mr. Finney requests the Court recommend that the BOP utilize a management variable[1] for the purpose of providing

---

[1] A "Management Variable" is available during the BOP classification process to reduce the security designation to allow for treatment:

> A Management Variable is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level. Application of a Management Variable requires review and approval by the DSCC Administrator. When completing the BP-338, institution staff may only enter a Management Variable which the DSCC previously approved and entered as a management reason. Otherwise, the DSCC is the only office authorized to enter a variable. A maximum of three Management Variables may be entered for each case.

programing for Mr. Finney's documented substance abuse history. Mr. Finney seeks the following specific recommendations:

- The Court recommends that the BOP place Mr. Finney in the Residential Drug Abuse Treatment Program (RDAP), as offered at FCI Petersburg – L (VA).
- The Court recommends that the BOP provide Mr. Finney with vocational training in the field of commercial driving, similar to the program at FCC Petersburg (VA).
- If the BOP designates Mr. Finney a high security classification, the Court recommends a management variable to medium or low security to facilitate Mr. Finney's treatment and vocational training.

For these reasons and those further reasons to be stated at Mr. Finney's sentencing hearing, Mr. Finney respectfully submits that an individualized assessment of the factors under § 3553(a) supports a sentence of 90 months' imprisonment.

Respectfully submitted,

By: /s/
Steve Mercer #12855
RaquinMercer LLC
50 Montgomery Ave., Ste. 200
Rockville MD 20850
Tel: (301) 880 – 9270
Email: Steve@RaquinMercer.com

*Counsel for Ronnie Finney*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this sentencing memorandum was served on all parties on September 29, 2022, *via* the ECF system.

By: /s/
Steve Mercer #12855

---

5100.008, Chapter 5, page 1.